PEOPLE ex rel. SHIELDS v. MARTIN et al.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

POLICE OFFICER—REMOVAL—EVIDENCE.

    The removal of a policeman for "becoming engaged in a fracas, and pointing a pistol at several persons," is not warranted by testimony that witness had "grabbed" a pistol from the policeman during the excitement, to which fact, however, he refused to swear on cross-examination, where the policeman did not begin the fracas, and the pistol which he carried when on duty was at the time locked up in the station house.

Certiorari by Charles J. Shields to review the determination of James J. Martin and others, constituting the board of police commissioners of the city of New York, dismissing relator from the position of patrolman. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Louis J. Grant, for relator.

Theodore Connoly and Terence Farley, for respondents.

BARRETT, J. The charge against the relator was that he "became engaged in a fracas in the lager beer saloon of Casper Iba, No. 255 Bowery, and, while so engaged, drew his pistol, and pointed it at several persons, in a threatening and very dangerous manner." The respondents do not rely upon the first branch of the charge. Indeed, they could not well do so, as there was not a particle of evidence connecting the relator with any criminal feature of this fracas. On the contrary, the patrolman Croughan, who was called by the prosecution, testified that the person with whom this fracas is said to have occurred (one Henry Iba) admitted under oath in

the police court that it was he (Iba) who raised the disturbance that started the row. It is a significant fact that this Henry Iba was not called as a witness before the respondents. Thus, the relator's story with regard to the occurrence, corroborated, as it is, by numerous witnesses, was entirely uncontradicted. It was substantially the only version of the fracas which the respondents had before them. The case as to the use of the revolver, though not quite so barren of testimony, is exceedingly weak. There is, in fact, no substantial evidence that the relator had or used a revolver upon the occasion in question. A single witness, Casper Iba (and he came upon the scene when the fracas was on the wane), does testify that he "grabbed" a revolver out of the relator's hands; but he did not adhere to this testimony. Upon cross-examination he said that he was not positive that he took the revolver from Shield's hands; that, at the time this revolver was "flourishing," there was great excitement, and a "great number of hands were up in the air"; and that somehow he got the revolver in his hand. He was then asked this question, and gave the answer which follows: "Q. You could not swear positively it was from Officer Shields' hand that you took the revolver? A. No." Further on he said he "thought it was Shields had the revolver." "I think," he added; "almost sure; I would not swear to it." This is all the testimony there was in support of the charge. The relator, on the other hand, testified that he had no revolver at the time of the occurrence; that his revolver was then locked up in a closet at the station house; and that, when accused, he took out his keys, and offered them to the sergeant, requesting the latter to open the closet, and see for himself that the pistol was there. At the close of the case, the counsel for the prosecution conceded that the relator's revolver was in the station house. It also appeared that the revolver which Casper Iba seized and brought to the station house was not the kind of pistol which police officers usually carry. There is a regulation revolver of the caliber 38. The pistol which was produced was of the caliber 32. Then, too, the relator was corroborated by the testimony of many witnesses. Thus, we have a case almost barren of testimony on the part of the prosecution, met with overwhelming evidence on the part of the defense, and surrounded by circumstances which place the probabilities clearly on the relator's side of the scale. While reaffirming all that was said in Lang's Case, 5 App. Div. 217, 39 N. Y. Supp. 74, we cannot possibly sustain the present conviction. It is hopelessly unsupported by the evidence.

The judgment under review must therefore be annulled, with $50 costs and disbursements, and the relator reinstated. All concur.